**CARL E. ROSTAD**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 3447**
**Great Falls, MT 59403**
**119 First Ave. North, #300**
**Great Falls, MT 59401**
**Phone: (406) 761-7715**
**FAX: (406) 453-9973**
**Email: Carl.Rostad@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**DARIN LEE MILLER,**<br><br>Defendant. | CR 15-32-GF-BMM<br><br><br><br>**OFFER OF PROOF** |

Darin Miller appears before the Court to enter a plea of Guilty to three charges contained in the Superseding Information.  The United States, by and through its counsel, Carl E. Rostad, Assistant U.S. Attorney for the District of

1

Montana, submits this Offer of Proof to provide the factual basis for the defendants' pleas.

*ELEMENTS:*

### Filing False Tax Return
### 26 U.S.C. § 7207

**First,** That the defendant filed documents with the Internal Revenue Service that contained false information, that is tax returns for the years 2009, 2010, and 2011, which contained statements as to a material matter;

**Second,** that the defendant knew that the information contained in those documents was false; and

**Third,** that in filing those false documents, the defendant acted willfully.

*FACTUAL BASIS:*

If this case went to trial in the United States District Court, the United States would prove the following:[1]

---

[1] The offer of proof does not encompass all of the proof that the United States would offer at trial but only the proof that would be necessary to support the elements of the charge to which the defendant is pleading guilty. The United States possesses, or may possess, other evidence which may be redundant to the evidence described below or otherwise unnecessary to the purposes of this stage of the proceeding. The United States possesses, or may possess, other evidence which will more fully inform the Court as to the appropriate sentence. Neither the Court nor the defendant should consider this pleading as inclusive of all evidence known to the government or a self-imposed limitation on the evidence it may use in the future for purposes other than to support the entry of plea.

During the period of the Superseding Information, Darin Miller was a pharmacist at the Rocky Boy Health Clinic (RBHC or the Clinic). The psychologist at the Clinic was James Eastlick.

Eastlick operated a loan program—called the JE Loan Program—with the Chippewa Cree Tribe (CCT or the Tribe), wherein he loaned money both to the Tribe in large amounts and to individual tribal employees in smaller amounts. After a couple of years running the loan program, Eastlick brought in Miller as a partner with the idea, according to Eastlick, that Miller would, over time, transition into complete ownership and management of the loan program.

Eastlick or Miller would wire transfer money to a bank account specifically for the JE Loan Program. Loans from the JE Loan Program to the Tribe were approved by the tribal council. The loans Eastlick made for the Tribe generally included interest rates of 10%, and were paid back within 10 weeks of Eastlick loaning the money. The annualized percentage rate (APR) for loans from the JE Loan program would constitute a 70% to 80% return.

With regard to the loans to the tribal employees, Eastlick and Miller had an arrangement with the Tribe that they would provide loans to tribal employees, and to guarantee the repayment of those debts, money would be taken from the employee's paycheck, consolidated with other debtors of the JE Loan program, and

3

then tribal checks would be regularly issued to Eastlick and Miller representing both interest and principal. The JE Loan Program had a similar working relationship with the Finance Offices of the Tribe's various subsidiary enterprises, such as the Rocky Boy Health Clinic and the Rocky Boy's School District, which handle their payroll internally and not through the Tribe's main finance office. These loans were also short-term loans that carried an interest rate of between 10% and 15%; with an annualized rate being significantly higher.

Both Eastlick and Miller were responsible for their own tax liability for the interest income they earned. Miller claimed $10,000 of interest income on his 2010 tax return but did not claim interest income from the tribal loan program on any other years. Once under investigation, and before any discussion about the nature of the inquiry, Miller sought the services of a Great Falls accountant to amend his returns to include interest from the lending business. Miller told the accountant, that, at the time he originally filed, he did not think he had to claim the interest income until he used it. However, Miller had claimed interest income from other sources and had claimed interest income on his prior years' tax returns and even the returns filed for the tax years under investigation—2009, 2010, and 2011.

The amounts of interest income are not insubstantial. Miller earned $17,148.68, $76,373.37, and $23,378.17 in interest income from tribal loans in

2009, 2010, and 2011 respectively.  According to the accountant, Miller had not kept track of the interest in the tax years in which it was realized and Miller and his accountant had to retrieve records from the Tribe to have his tax returns amended.  Even when amended, Miller's returns failed to account for significant interest received.

According to the accountant, Miller did not reveal that at some point during these years he increased the interest rate he charged for individual loans from 10% to 12.5% until after the amended returns had been prepared.  It would have been important for a tax preparer to know that interest rate had been increased to 12.5% in order to accurately amend Miller's tax returns.  Eastlick also knew Miller had increased the interest rate he charged to 12.5% when he took over the loan program with the CCT.  Some employees of the RBHC and loan recipients also verified Miller raised his interest rate to 12.5%.

Miller had a bank account with Wells Fargo Bank.  From 2009, when Miller first became involved with Eastlick's loan program, and 2011, Miller deposited $635,818.48 in tribal loan checks into his Wells Fargo Bank account.  This figure does not include any checks Miller transacted into cash at Wells Fargo.  In addition to the bank account with Wells Fargo, during the same time period, Miller cashed

$71,109.53 in checks at Leon's Buy & Sell and another $142,042.87 at Leon's Finance.

DATED this 1st day of October, 2015.

                MICHAEL W. COTTER
                United States Attorney

                <u>/s/ Carl E. Rostad</u>
                CARL E. ROSTAD
                Assistant U.S. Attorney
                Attorney for Plaintiff